IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. **10-cv-2012-JLK-CBS**

**JESUS HECTOR PALMA-SALAZAR,**

      Plaintiff-Petitioner,

v.

**BLAKE DAVIS, WARDEN,**
United States Penitentiary
Administrative Maximum Facility,
Florence, Colorado

and

**FEDERAL BUREAU OF PRISONS,**

      Defendants-Respondents.

_____

MEMORANDUM OPINION AND ORDER
_____

KANE, J.

Petitioner is an extradited citizen of Mexico in the custody of the United States

Bureau of Prisons at the United States Penitentiary Administrative Maximum (ADX) in

Florence, Colorado.  He alleges that his confinement in ADX Florence is a violation of

his rights under the Extradition Treaty between the United States and Mexico and the

United States Constitution.  This matter has been fully briefed, and I have thoroughly

considered the parties' arguments.  For the reasons stated below, Petitioner's Petition for

Writ of Habeas Corpus Under 28 U.S.C. § 2241 (doc. 1) is DENIED.

## BACKGROUND

### *Procedural History*

Petitioner initially filed these claims on March 24, 2010, in an Application for

Habeas Corpus under 22 U.S.C. § 2241.  Magistrate Judge Boland recharacterized the

claim as a prisoner civil rights action under *Bivens v. Six Unknown Named Agents of Fed.*

*Bureau of Narcotics*, 403 U.S. 388 (1971), Order Directing Applicant to File Amended

Pleadings, No. 10-cv-00689 (D. Colo. April 9, 2010) (doc. 5), and Petitioner filed an

amended pleading which included *Bivens* claims but also retained his demand for habeas

corpus.  First Amended Complaint and Petition for Writ of Habeas Corpus, No. 10-cv-

00689 (D. Colo. May 9, 2010) (doc. 7).  Judge Brimmer dismissed the habeas claim,

Order to Dismiss in Part, No. 10-cv-00689 (D. Colo. May 12, 2010) (doc. 8), and I denied

Petitioner's motion to reinstate his habeas claims.  Order Denying Motion for Order to

Reinstate, No. 10-cv-00689 (D. Colo. June 8, 2010) (doc. 11).

Petitioner then opened a separate civil action and amended and re-filed his habeas

petition  as the Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 By a Prisoner

in Federal Custody (doc. 1) currently before me.[1] [2]

---

[1]  The re-filed Petition and the Petition in the previous action are nearly identical. Petitioner made minor changes in diction, focusing on the legality as opposed to the conditions of his confinement.  Most significantly, he added his Eighth Amendment claim.

[2]  At Petitioner's request, his *Bivens* action has been administratively closed pending the outcome of this proceeding.

*Factual Background*

Petitioner was arrested by Mexican authorities on June 22, 2002, on an extradition warrant based on a 1995 indictment filed in the Southern District of California charging him with conspiring to distribute over ten kilograms of cocaine. Petitioner was held in continuous custody in Mexico until his extradition to the United States on January 19, 2007.

Following his extradition, Petitioner was held at the Western Region Detention Facility in San Diego, California, and the San Diego Correctional Facility. Shortly after his sentencing in February 2008, Petitioner was imprisoned at the La Paz County Jail in Parker, Arizona.

Pursuant to Bureau of Prisons procedures, Petitioner was recommended for initial designation to the general population of ADX Florence on May 15, 2008. On June 18, 2008, Petitioner was given notice of a transfer hearing. The notice advised Petitioner that he qualified for placement at ADX because (1) his conduct created a risk to institutional security and good order and posed a risk to staff, inmates, or the public; and (2) as a result of his status before or after incarceration, he could not be safely housed in the general population of another institution. The notice also included the factual bases for recommending Petitioner to the ADX and explained the procedures for, and his basic rights at, the hearing.

At the hearing, held on June 24, 2008, Petitioner was afforded an opportunity to make a statement and present documentary information. Following the hearing, the

hearing administrator recommended Petitioner's designation to the general population of

ADX, and on June 25, 2008, Petitioner received a written copy of the report.[3]  The

recommendation was forwarded to the Bureau of Prisons' regional director, who issued a

final decision on June 27, 2008, accepting the recommendation.  Contrary to common

procedures, Petitioner did not receive written notification of the final decision.  In light of

this failing, the Bureau of Prisons allowed Petitioner to file a late appeal.  The appeal,

filed on December 5, 2008, was denied by the Bureau of Prisons on March 26, 2009.

During the pendency of the above procedures, Petitioner was transferred to ADX

Florence.  He arrived at ADX on July 25, 2008, and was placed at the Special Housing

Unit pending his assignment to a specific general population unit.  He was confined in the

general population unit of the ADX from August 5, 2008, until April 13, 2010.  On April

14, 2010, he was placed in J-Unit, the intermediate phase of ADX's Step-Down

Program,[4] and on October 22, 2010, he was placed in K-Unit, the transitional phase.  He

---

[3] In reaching her determination, the hearing officer relied upon the following
information:  the memorandum from DSCC Chief Sauers; United States Marshal Services
reports; SENTRY information; Petitioner's criminal judgment; a Supplemental Report to the
Bureau from the United States District Court, Southern District of California; information
provided by the United States Attorney's Office for the Southern District of California; the fact
that Palma-Salazar was designated as a significant foreign narcotics trafficker, according to the
U.S. Department of the Treasury, Office of Foreign Assets Control; and Congressional testimony
by a former administrator of the Drug Enforcement Administration.

[4] As explained by Judge Krieger:

ADX has a stratified housing system which allows inmates to progress through a
"step-down" program from the most restrictive to the least restrictive housing
assignment. Ordinarily, inmates are first housed in the General Population Unit,
then progress into the Intermediate/Transitional Unit, and then progress into the
Pre-Transfer Unit before they are transferred out of ADX. Ordinarily, inmates are

is currently confined in the K-Unit.

## JURISDICTION AND VENUE

It is well settled that Federal courts are courts of limited jurisdiction; I may only

hear those cases which have been entrusted to me under a jurisdictional grant by

Congress. *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994) (citing

*Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986); and *United States v.*

*Nixon*, 418 U.S. 683 (1974)).  Petitioner argues I have jurisdiction over his claims

pursuant to Congressional grants of jurisdiction for issues pertaining to questions of

federal law, 28 U.S.C. § 1331, and habeas corpus, 28 U.S.C. §§ 2241(a), (c)(1), and 2243.

Specifically, Petitioner alleges that jurisdiction is proper under these statutes because his

petition:

> involves a challenge to the execution of a federal criminal sentence brought
> by the plaintiff-petitioner, an inmate, who is confined within the territorial
> jurisdiction of this Court, where he is held in custody of the respondents
> under color of the authority of the United States, and because his custody is
> in violation of the Constitution, laws, and treaties of the United States.

Petition for Writ of Habeas Corpus (doc. 1) at 3.  Respondents counter, arguing that

Petitioner's claims should be filed under *Bivens*.[5]  According to Respondents, because

---

> automatically assessed every six months for purposes of determining whether
> they should progress in this manner. Progression through these levels takes a
> minimum of 36 months, but can last longer.

*Ajaj v. United States*, 2006 U.S. Dist. LEXIS 92897, *15 (D. Colo. Dec. 22, 2006).

[5]  As noted above, Petitioner has filed a *Bivens* challenge to his confinement in ADX
Florence, but that proceeding has been closed pending the resolution of Petitioner's habeas

Petitioner is challenging the conditions – not the legality – of his confinement in ADX

Florence, his claims lie outside the core of habeas corpus and I lack jurisdiction.

The nature of Petitioner's challenge is the essential issue.  If, as Respondents

allege, he is challenging the conditions of his confinement, he must bring his action under

*Bivens.  See Boyce v. Ashcroft*, 251 F.3d 911, 917-18 (10th Cir. 2001).  If, however, as

Petitioner argues, he is challenging the execution of his sentence, habeas corpus affords

the proper remedy.  *See Yellowbear v. Wyoming Attorney Gen.*, 525 F.3d 921, 924 (10th

Cir. 2008).

Taken at face value, Petitioner's claim appears appropriately to be filed as a habeas

action under § 2241.  He purports to challenge the unlawful execution of his sentence,

and he seeks an order directing the Bureau of Prisons to release him "from their custody

unless within a reasonable time as set by the Court they execute his sentence by

incarcerating him in a BOP institution in which he can be lawfully held."  Petition for

Writ of Habeas Corpus (doc. 1) at 1.  This is commonly referred to as a "conditional

writ."  "Conditional writs enable habeas courts to give States [and Federal authorities]

time to replace an invalid judgment with a valid one, and the consequence when they fail

to do so is always release."  *Wilkinson v. Dotson*, 544 U.S. 74, 87 (2005) (Scalia, J.,

concurring).  They are not , however, tools which allow habeas courts or petitioners to

"extort from the respondent custodian forms of relief short of release, whether a new

---

petition.

parole hearing or a new mattress in the applicant's cell." *Id.* In other words, Petitioner

may not challenge the conditions of his confinement by merely invoking my authority to

issue a conditional writ.

Petitioner's claim relating to the Rule of Specialty found in the Extradition Treaty

between the United States and Mexico challenges the execution of his sentence and the

legality of his confinement. It is, therefore, properly pursued under § 2241 and I have

jurisdiction to hear it. Furthermore, because Petitioner is currently incarcerated at a

Federal facility in the state of Colorado, venue is proper in this district. 28 U.S.C. § 2241.

Petitioner's 5th and 8th Amendment claims are, however, essentially challenges to

the conditions of his confinement at ADX Florence. Although he has presented his

claims in a somewhat novel form, he seeks the same relief which the 10th Circuit has

repeatedly denied in other cases. *See Boyce*, 251 F.3d at 917-918 (vacated as moot)

(finding that an action by a federal prisoner regarding his transfer from one federal prison

to another was not properly brought pursuant to § 2241); *United States v. Garcia*, 470

F.3d 1001, 1002 (10th Cir. 2006) (applying *Boyce* and finding that a prisoner's claim

seeking transfer to another federal prison facility was not appropriately brought pursuant

to § 2241 because it challenged the conditions of confinement).

Petitioner's attempt to distinguish *Boyce* as "non-binding precedent" with "no

persuasive value, since it is in conflict with . . . binding Circuit precedent" is

unpersuasive. In *Boyce*, the Tenth Circuit directly addressed and distinguished the

"binding Circuit precedent" Petitioner refers to.  Specifically, it discussed the holdings in

*Montez v. McKinna*, 208 F.3d 862 (10th Cir. 200), and *Cooper v. McKinna*, 2000 U.S.

App. LEXIS 1405 (10th Cir. Feb. 2, 200)  and noted that they are "distinguishable

because they involved state prisoners who were challenging the fact of incarceration in

states other than those in which they had been convicted and sentenced."  *Boyce*, 251 F.3d

at 918.  Similar to the petitioner in *Boyce*, Petitioner is challenging the Bureau of Prisons'

choice of prisons, not the state's authority to imprison him in another state.  "He does not

challenge the fact or duration of his federal custody but rather his conditions of

confinement."  *Id.*  Accordingly, I have no jurisdiction to hear these claims under § 2241.

## ANALYSIS

### *Habeas Corpus*

Petitioner argues that Respondents' consideration of crimes other than the

cocaine offense for which he was extradited amounts to a violation of the Rule of

Specialty in the extradition treaty between the United States and Mexico.  In pertinent

part, the treaty provides, "A person extradited under the present Treaty shall not be

detained, tried, or punished in the territory of the requesting Party for an offense other

than that for which extradition has been granted nor be extradited by that Party to a third

State . . . ."  Extradition Treaty, U.S. - Mex., May 4, 1978, art. XVII, 31 U.S.T. 5059.

Respondents argue that the Rule of Specialty is inapplicable under Petitioner's

circumstances, and in the alternative even if applicable the claim lacks merit.

The Rule of Specialty is "concerned primarily with prosecution for different

substantive offenses than those for which consent has been given, and not prosecution for

additional or separate counts of the same offense." *United States v. LeBaron*, 156 F.3d

621, 627 (5th Cir. 1998); *see also United States v. Abello-Silva*, 948 F.2d 1168, 1173

(10th Cir. 1991).  Perhaps recognizing the seeming inapplicability of the rule to his

transfer to ADX, Petitioner argues that, in light of the harsh conditions at ADX,[6] the

transfer itself constitutes punishment "for crimes other than the one for which he was

extradited to the United States."  In support of this argument, Petitioner cites the report of

the hearing administrator who initially recommended his assignment to ADX.  In

justifying her decision, the hearing officer cited Petitioner's involvement in acts of

extortion, bribery, corruption of public officials, and murders.

Notwithstanding this creative argument, Petitioner is not being detained, tried, or

punished for any crime other than the one for which he was extradited.  There has been no

other indictment, conviction, or judgment and there is no such thing as a *de facto*

violation of the Rule of Specialty.  Petitioner's other criminal activities were legitimately

---

[6] The ADX is a unique facility, designed to house the most troublesome inmates in the Federal prison system.  As Petitioner notes, confinement in ADX is "radically different than life in the general population of a normal high security prison."  Petition for Writ of Habeas Corpus (doc. 1) at 11.  The cells at ADX are 87 square feet.  Each cell has a window that looks outside, providing the inmate with natural light.  Inmates are confined to their cells the vast majority of their time.  They do, however, receive a minimum of 10 hours of out-of-cell exercise per week.  Although inmates are held in isolation, they may receive two, 15-minute social telephone calls per month and up to five social visits, monthly.  They may also talk with each other while in their cells, or during their out-of-cell recreation.  Significantly, "incarceration at ADX does not itself affect the inmate's ability to earn good conduct time."  Answer to Petition (doc. 15) at 15.

considered in determining Petitioner's security risk and classification.[7]  The Bureau of

Prisons' administrative decisions may be based on a variety of factors, and those factors

need not be limited to the offense for which Petitioner was extradited.

Although not binding precedent, two recent decisions from the Eight Circuit

support this conclusion.  In *Leighnor v. Turner*, the Eighth Circuit held that an identical

Rule of Specialty provision contained in the United States' extradition treaty with

Germany was not intended to preclude a receiving government from taking into account

any pre-extradition conduct in making parole decisions.  *See* 884 F.2d 385, 389-90 (8th

Cir. 1989).  The Eighth Circuit also recently held that the United States' Extradition

Treaty with Mexico does not prohibit a court from considering all pre-extradition conduct

in determining a defendant's sentence.  *U.S. v. Lomeli*, 596 F.3d 496 (8th Cir. 2010).

The post-sentencing designation of an inmate to an appropriate institution bears

much more similarity to parole and sentencing proceedings than it does to criminal

prosecutions.  *See* Restatement (Third) of Foreign Relations Law of the United States §

477 cmt. c (1987) ("Evidence of offenses prior to that on which the extradition was based

may be introduced for purposes of multiple-offender sentencing, demonstrating

propensity to commit a crime, or similar ancillary purposes, if otherwise admissible

according to the law where the prosecution is brought").  Therefore, I find the Rule of

---

[7] Congress has specifically delegated the assignment of prisoners to the Bureau of
Prisons' discretion.  18 U.S.C. § 3621(b) (stating that the Bureau "shall designate" the place of
incarceration for an inmate that is "appropriate and suitable" after considering five factors).
Thus, even if I were to review the Bureau's administrative decision, my review would be limited
to determining whether the Bureau had abused is discretion.

Specialty inapplicable to Petitioner's circumstances.

*Mandamus*

In addition to his habeas claim, Petitioner also seeks mandamus relief for the

alleged violations of the Extradition Treaty's Rule of Specialty provision and the Fifth

Amendment.  Although I have the authority to consider "any action in the nature of

mandamus to compel an officer or employee of the United States or any agency thereof to

perform a duty owed to the Petitioner," 28 U.S.C. § 1361, mandamus "is a drastic

remedy, available only in extraordinary circumstances.  Furthermore, the writ is not

available when review by other means is possible."  *W. Shoshone Bus. Council v. Babbitt*,

1 F.3d 1052, 1059 (10th Cir. 1993).

Because I have already reviewed Petitioner's treaty claim and his Fifth

Amendment claim is subject to review in his previously filed *Bivens* action, mandamus

relief is inappropriate.[8]

**CONCLUSION**

Petitioner was convicted and is serving a valid sentence.  The Rule of Specialty is

not applicable to his circumstances.  Furthermore, his Fifth and Eighth Amendment

---

[8] Petitioner acknowledges that he could obtain relief through a *Bivens* action, but argues that, "because such actions can take years to litigate, given that Mr. Palma-Salazar will complete his sentence in less than five years, it virtually impossible for him to obtain relief through that means." [sic] Reply to Respondents' Answer (doc. 18) at 20.  I find this argument disingenious. Petitioner has consistently resisted court orders requiring him to bring his claims pursuant to *Bivens*.  This has resulted in a delay of, at minimum, eight months.  In fact, Petitioner moved to administratively close his *Bivens* pending the outcome of his habeas claim.  Petitioner cannot rely upon a delay that he is at least in part responsible for.

claims challenge the conditions of his confinement and are not subject to my limited

habeas corpus jurisdiction.  Accordingly, his Petition for Writ of Habeas Corpus (doc. 1)

is DENIED.[9]  The clerk of court shall enter judgment and close this case.


Dated: December 22, 2010.                          **s/John L. Kane**
                                                   SENIOR U.S. DISTRICT JUDGE

---

[9]  It is not clear whether 28 U.S.C. § 2253 requires the issuance of a Certificate of
Appealability before Mr. Palma-Salazar may seek review of this ruling.  To the extent such a
Certificate is necessary, I have considered the standards of *Slack v. McDaniel*, 529 U.S. 473, 484
(2000), and I find that Mr. Palma-Salazar has not made a substantial showing that his petition
states a valid claim of the denial of a constitutional right, that I have jurisdiction over such claim,
or that there was an actual denial of his constitutional rights such that reasonable jurists could
disagree as to the disposition of his petition.  Accordingly, I deny a Certificate of Appealability.